UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR MATTHEWS,                          Case No. 23-11416

      Plaintiff,                          Hon. F. Kay Behm
v.                                        United States District Judge

CITY OF DETROIT, *et al.*,                Hon. Kimberly G. Altman
                                          U.S. Magistrate Judge
      Defendants.
_____ /

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (ECF No. 40)**

## I.    PROCEDURAL HISTORY

This matter is before the court on Defendants' motion for

summary judgment (ECF No. 40).  This is an employment

discrimination case brought by Arthur Matthews ("Matthews), a police

officer with the Detroit Police Department ("DPD"), here represented by

Defendant City of Detroit (the "City").  Matthews was on disability

leave for over ten years.  He alleges that the City violated the

Americans with Disabilities Act ("ADA") during a series of events where

the Department ordered him to return to work after he was cleared for

light duty by a physician, and after he experienced a heart attack and

1

once again stopped work, the Department discriminatorily changed his duty status.

The motion is fully briefed. *See* ECF No. 40 (motion for summary judgment); ECF No. 43 (Response); ECF No. 44 (Reply). The court held a hearing on April 30, 2025, at which counsel for both parties were present. The court ordered supplemental briefing specifically addressing the timeline of events, which was somewhat difficult to follow in the original briefs. *See* ECF No. 45 (Defendants' supplemental brief); ECF No. 46 (Plaintiff's supplemental brief). After one of the issues in this case was addressed in an intervening decision by the United States Supreme Court in *Stanley v. City of Sanford*, No. 23–997, 606 U. S. ____ (2025), the court ordered a second round of supplemental briefing in order to give each party the chance to address the impact of that case before a decision was issued on this motion. ECF No. 47 (Order); ECF Nos. 48, 49 (second set of supplemental briefs).

For the reasons below, the court **GRANTS** the motion for summary judgment and dismisses the case.

## II.    FACTUAL BACKGROUND

Arthur Matthews is a corporal with the Detroit Police Department.  ECF No. 40, PageID.209.  He was originally hired in 1993.  ECF No. 41-1, PageID.241.  In 2011, Matthews was the victim of an attempted armed robbery while off-duty.  During the attempt, he identified himself as a police officer and was shot multiple times, causing injuries that render him physically disabled to this day.  ECF No. 40, PageID.209.  While the Department at first deemed his injuries non-compensable (finding they occurred off-duty), that decision was reversed for reasons not in the record, and Matthews received worker's compensation benefits from then on.  From 2011 to 2022, Matthews performed no work for the Department because his disability rendered him unable to work, but received worker's compensation while on what the Department refers to as "disabled" duty status.  *Id.*

In February 2022, however, Matthews was cleared for light desk duty by a doctor at the Henry Ford Occupational Health Clinic.  *Id.* at PageID.209-10.  Due to his physical limitations, he was only cleared for desk duty, 2 to 3 hours a day, every other day, with no use of his upper

left arm.[1]  On February 10, 2022, his duty status was changed from

"disabled" to "restricted" (i.e. he could return to restricted work

conditions).  *Id.* at PageID.210; ECF No. 41-6, PageID.417 (restricted

status form).  That meant he had to report for work or risk being

declared absent without leave.  *See* ECF No. 41-1, PageID.362 ("Any

member declared fit for . . . restricted duty by a Department designated

physician that does not report for duty shall be considered absent

without leave").  He did, as a result, go to work for a couple of days that

month for the first time in over 10 years.  ECF No. 46, PageID.618; ECF

No. 45, PageID.498.  The duties were, in essence, organizing files and

working the phones.  *See* ECF No. 41-1, PageID.243.  However, on

February 22, 2022, he was again placed off-work after a follow-up

appointment and his evaluating physician requested a follow-up with a

specialist.  ECF No. 45, PageID.498; ECF No. 41-8, PageID.421-23

(doctor's note and off-work status).  The reason, although not clearly

---

[1] Matthews claims this was "against [his] doctor's orders."  ECF No. 41-1,
PageID.243.  This appears to be a reference to his neurologist's opinion of
Matthew's fitness versus the department designated physician.  *See* ECF No. 41-11,
PageID.432 ("Writer was forced back to work . . . against several plees [sic] from the
treating doctor Charles Edward Schultz MD, (University of Michigan Neurological
Department)."); ECF No. 41-10, PageID.430 (recommendation to assign Matthews
to desk duty by Dr. Tahir Hasan).

explained by the parties, appears to be that Matthews had suffered a fall (unrelated to work) in February 2022, and his doctor decided that he would need time off to heal from that injury before returning to work.  *See* ECF No. 41-1, PageID.244; *see also* ECF No. 45-5, PageID.606 (referencing the fall).

From February 22, 2022 to April 17, 2022, Matthews did not work and used sick time.  ECF No. 45, PageID.498; ECF No. 45-2, PageID.592-97.  On March 22, 2022, Plaintiff's disability changed from duty disabled to sick leave.[2]

On March 25, 2022, Matthews had a follow-up at the Henry Ford clinic.  He was again placed off-work, and the doctor noted Matthews did not feel comfortable returning to work.  ECF No. 41-9, PageID.426-27.

---

[2] Although not material to this motion, the work period time report (ECF No. 45-2, PageID.596) and payroll report (PageID.597) don't quite match.  The first indicates that the time to March 20 was "disabled" leave, not "sick" leave; the second reports the time as sick leave.  It is not clear to the court why these are different (though perhaps the discrepancy is attributable to the time taken off for his fall early in 2022 rather than his disability). *See* ECF No. 41-1, PageID.264 ("[Dr. Hasan] first changed my duty status with the initial injuries from me falling").  As is later explained, the point is not ultimately material because any claim based on that designation is untimely.

However, a few days later, on March 29, 2022, he was again cleared for desk duty.  ECF No. 41-10, PageID.429-30.  So in April 2022, Plaintiff returned to desk duty at the Detroit Detention Center ("DDC") where his job duties consisted of organizing files and answering phones. He worked a couple of days a week from April 18, 2022 to May 1, 2022. *See* ECF No. 45-2, PageID.531 (23 hours between April 18 to May 1).  It does not appear that he worked again until May 18, 2022.  ECF No. 45-2, PageID.590; ECF No. 45-2, PageID.532 (not indicating any regular hours worked).[3]

On May 18, 2022, while on duty at the DDC, Plaintiff alleges he experienced pain and muscle spasms in his lower back, and pain in his left arm.  ECF No. 41-11, PageID.432.  Plaintiff testified that he notified his supervisor, Captain Laurie Carter, who had him sit on two stacked milk crates.  ECF No. 41-1, PageID.245.  He then went home early and apparently used vacation/furlough time to account for the day.  ECF No. 41-12, PageID.434; ECF No. 41-1, PageID.245.

---

[3] "E-day" is not explained to the court, but "BV" is "bonus vacation" time.  His testimony seems to contradict that record, indicating he was working at least on May 17 as well, and prior to that, once every three days.  ECF No. 41-1, PageID.245.  Again, even assuming he worked during that time, any dispute is not material.

On May 19, 2022, Plaintiff alleges that he went to the University of Michigan Hospital where he was kept overnight and ultimately diagnosed as having had a heart attack.  Plaintiff alleges that he suffered a second heart attack on May 20, 2022, and was admitted to Oakwood Hospital where he stayed for two days.  ECF No. 43, PageID.445; ECF No. 41-1, PageID.245-46.

On May 31, 2022, he told the Department that he had sustained a duty-related injury.  ECF No. 41-12, PageID.434.  However, his duty status was changed to "sick" as of May 31, 2022.  "Sick" status is a Department designation used to denote an employee unable to work as the result of a non-duty related injury or illness.  ECF No. 41-1, PageID.366.  As a result of being designated "sick" rather than "disabled" (as he had been previously prior to February 2022), he had to use his personal/sick time to cover his absence to be paid.

Matthews did not work for the next two years, from May 18, 2022, through May 14, 2024.  ECF No. 46, PageID.620.  By October 2023, he had exhausted all of his sick/leave time.  ECF No. 43, PageID.455.

Matthews also alleges a number of difficulties getting DPD to sign off on various documentation that he needed for insurance for medical

procedures during 2023.  He says that on March 15, 2023, he tried to

get signatures that his secondary insurance required, but the medical

section requested more documentation because "your doctors will say

anything!"  ECF No. 41-1, PageID.260.[4]  Apparently right after that

difficult meeting with DPD, Matthews filed a Charge of Discrimination

with the EEOC on the same day, March 15, 2023, and the EEOC issued

a right to sue letter on March 16, 2023.  ECF No. 1-1, PageID.14; ECF

No. 1-2, PageID.17.  This suit was filed on June 14, 2023.  ECF No. 1.

Plaintiff brings two counts, for "Discrimination" and "Retaliation"

under the ADA.  ECF No. 12, PageID.51-58.  Defendant reads Plaintiff's

amended complaint to allege two species of claims under Count I:

disability-based discrimination in the form of disparate treatment, and

failure to accommodate.  ECF No. 12, PageID.52-53 (Amended

---

[4] Department policy also states that "as a condition for continuing 'disabled' or 'limited duty' status and the benefits thereof, the members must submit to all reasonable examinations ordered by the Department. Failure to do so will lead to immediate termination of such status and benefits."  ECF No. 41-1, PageID.362; *see also* ECF No. 41-1, PageID.366 ("Members who are non-duty sick or restricted duty shall report for all physical examinations and medical appointments when directed."); ECF No. 41-1, PageID.363 ("Members shall provide supporting documentation to substantiate their continued illness/injury, when requested to do so by Police Medical, to the Department designated physician . . . .").

Complaint); ECF No. 40 (Defendant's motion).  Plaintiff accepts that

framing in their response (ECF No. 43), and so the court adopts it.

## III.  STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be

granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or

is genuinely disputed must support the assertion by: (A) citing to

particular parts of materials in the record...; or (B) showing that the

materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for

determining whether summary judgment is appropriate is "whether the

evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a

matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433,

436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

242, 251-52 (1986)).  Furthermore, the evidence and all reasonable

inferences must be construed in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).  To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

## IV.  ANALYSIS

## A.  John Doe Defendants

First, a housekeeping item: the amended complaint (ECF No. 12) included 10 "John Doe" Defendants, but Plaintiff never amended his complaint to identify these individuals.  At the hearing on this motion on April 30, 2025, Plaintiff's counsel agreed that these ten Defendants should be dismissed.  All claims against the ten "John Doe" Defendants are therefore **DISMISSED** under Fed. R. Civ. P. 21 and 41.

## B.  Timeliness of EEOC charge

The filing of a timely discrimination charge with the EEOC is not a jurisdictional requirement but is a mandatory claim-processing rule that "a court must enforce . . . if a party properly raises it." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019) (internal quotation marks, brackets, and citation omitted); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").  The applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  In a deferral

11

state like Michigan, the discrimination charge must be filed within three hundred days after the alleged unlawful employment practice occurred. *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001) (quoting 42 U.S .C. § 2000e-5(e)(1)); *Loffredo v. Daimler AG*, 666 F. App'x 370, 377 (6th Cir. 2016). This requirement is strictly enforced. *See Cotton v. Williamson Cty. Gov't*, 650 F. Supp. 3d 609, 629 (M.D. Tenn. 2023) (charge filed on 301st day (one day late) was untimely).

Here, Matthews filed his EEOC charge on March 15, 2023. Defendant has raised the issue of the timeliness of his claims. ECF No. 40, PageID.213. That puts the 300-day mark at May 19, 2022, one day *after* his last day of work with DPD (at least until 2024, and after the events alleged to constitute discrimination). Matthews presents no arguments for why any sort of tolling should apply or why the court should use any earlier date to calculate the 300 days. *See, e.g.*, *Cotton*, 650 F. Supp. 3d at 629 (explaining a limited exception). Plaintiff instead tries to get around application of this requirement by (in a somewhat conclusory statement) asserting that "the facts provided in the present lawsuit make it abundantly clear that the discrimination that Plaintiff has faced at the hands of the Defendant is perpetual in

nature." ECF No. 43, PageID.459. As Defendant points out, this argument appears to invoke the continuing violations doctrine. Under the continuing-violation theory, a claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002). But the continuing-violation theory is only available for hostile-work-environment claims. *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613 (6th Cir. 2020); *Phillips v. Shelby Cty.*, No. 23-5118, 2024 U.S. App. LEXIS 16747, at *8 (6th Cir. July 9, 2024). That doctrine doesn't apply to this case. As far as Plaintiff's EEOC charge might raise the specter of a hostile work environment claim, that claim was not advanced by Plaintiff and was disclaimed by Plaintiff's counsel at the hearing, and the court does not address that possibility further.

Meanwhile, similar doctrines are also not available here. Although courts at one point recognized an exception for serial violations of a recurring nature, the Supreme Court has clarified that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each

13

discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113; *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003).  So discrete acts, such as a benefits termination, occur on the day they happen, and a plaintiff must file a charge within 300 days of the date of the act or lose the ability to recover for it. *Morgan*, 536 U.S. at 110; *Everson v. Coca-Cola Co.*, No. 24-11058, 2024 U.S. App. LEXIS 31807, at *3 (11th Cir. Dec. 16, 2024).

A different category of violation that might offer a reprieve is a "longstanding and demonstrable policy of discrimination."  *Sharpe*, 319 F.3d at 268.  To establish this category of continuing violation, "appellant must demonstrate something more than the existence of discriminatory treatment in his case."  *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992) (citing a discriminatory policy appearing in a statute or an affirmative action plan as  examples of this second category).  "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *EEOC v. Penton Indus. Publishing Co.*, 851 F.2d 835, 838 (6th Cir. 1988) (citations omitted).  Nothing of that kind is alleged here – no facts

14

are advanced as to any other disabled employees from which the court could conclude that intentional discrimination against duty-disability officers was "standard operating procedure."

Thus in this case, only discrete acts that occurred after May 18, 2022, are timely brought, which means the dispute centers, in essence, on the benefits status change on May 31, 2022.  With that in mind, the court turns to another, related issue; the actual facts alleged in Plaintiff's EEOC charge.

## C.    Failure to Exhaust

The requirement of exhaustion, while not jurisdictional, is also a mandatory prerequisite that, like the filing deadlines discussed above, is enforced if properly raised by the defendant.  *See Kilpatrick v. HCA Hum. Res., LLC*, 838 F. App'x 142, 145-46 (6th Cir. 2020) (citing *George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020)).  A Title VII or ADA plaintiff generally "cannot bring claims in a lawsuit that were not included in his EEOC charge."  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)); *McClain v. Ford Motor Co.*, No. 19-

15

12722, 2022 U.S. Dist. LEXIS 40296, at *8 (E.D. Mich. Mar. 7, 2022).

This rule is to be construed liberally, however, "so that courts may also

consider claims that are reasonably related to or grow out of the factual

allegations in the EEOC charge." *Id.* at 362. "As a result, 'whe[n] facts

related with respect to the charged claim would prompt the EEOC to

investigate a different, uncharged claim, the plaintiff is not precluded

from bringing suit on that claim.'" *Id.* (quoting *Davis v. Sodexho*, 157

F.3d 460, 463 (6th Cir. 1998)).

The EEOC charge in this case states, almost in full:

> On or about May 6, 2011, I [Matthews] suffered a
> work-related injury, which caused my disability
> and other severe medical issues that forced me to
> go on leave. The employer forced me to use
> personal leave. Against my doctor's orders the
> employer required me to return to work on or
> about May 8, 2022. Immediately upon return, I
> was harassed by the Lieutenant who created a
> hostile work environment. On or about May 18,
> 2022, I constructively [sic] discharged.

ECF No. 1-1, PageID.14.

Notably, none of those events in the charge happened on or after

May 19, 2022, which is the earliest date encompassed by the 300-day

rule explained above. Defendant has raised the problem that

Matthews' claim is time-barred because his EEOC charge does not

16

allege any acts after May 18, 2022 nor specific acts of retaliation.  ECF
No. 40, PageID.213, 223.  So any claim Plaintiff is bringing must be one
that is "reasonably related" to or "grew out of" those allegations.  For
purposes of this opinion, the court assumes that the loss of benefits
status related to his cardiac episodes is sufficiently related to, or grew
out of, these same events and Matthews was not first required to file a
separate charge.

### D.   Qualified individual and discrimination claims

Title I of the ADA bars employers from "discriminat[ing] against a
qualified individual on the basis of disability in regard to . . .
compensation" and other matters.  42 U.S.C. § 12112(a).  The statute
defines a "qualified individual" as "an individual who, with or without
reasonable accommodation, can perform the essential functions of the
employment position that such individual holds or desires." § 12111(8).

The U.S. Supreme Court very recently addressed one issue that
Defendant raised in their motion, and it is central to Plaintiff's
discrimination and accommodation claims: whether the ADA applies to
termination of benefits after an employee has ceased to be a "qualified
individual" under the meaning of the ADA.  Or: when an employer

makes a discriminatory change in postemployment benefits that an employee earned while qualified and employed, does the employer discriminate against the person in her capacity as a qualified individual?  *See Stanley v. City of Sanford*, No. 23–997, 606 U. S. ____ (Jun. 20, 2025).  Stanley was a firefighter for her city, and at the time she was hired, her employer offered health insurance until age 65 for two categories of retirees: those who retired with 25 years of service, and those who retired earlier because of a disability.  But in 2003, the employer changed its policy: those who retired earlier because of a disability would only be entitled to 24 months, or until Medicare kicked in if that was sooner.  *Id.* at *6.  Stanley developed Parkinson's disease and her disability forced her to retire in 2018 (earlier than she'd planned), and that meant she was entitled to, at most, 24 months of employer-provided health insurance, and not until age 65.  *Id.*  The Court held that the discrimination Ms. Stanley alleged—reduced healthcare benefits—did not take place until after she retired.  And by that point, she was not a "qualified individual" under the ADA because she was not someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that

18

such individual holds or desires."  Thus, her ADA claim failed; "qualified individuals" under the ADA are only "those who hold or seek a job *at the time* of the defendant's alleged discrimination."  *Id.* at *16. In other words, the ADA has a "temporal reach" because "the statute does not reach [individuals] who neither hold nor desire a job at the time of an alleged act of discrimination."  *Id.* at *9.

Admittedly, that case was about retirees; Matthews is not retired and is, apparently, now working again for DPD.  And during all relevant periods, he remained employed by DPD.  But nothing in *Stanley*'s language restricts its application to only retirees; if a firefighter who became disabled and had to stop working was not a qualified individual upon her retirement because she could no longer perform the essential functions of the job she held, so too is a police officer forced onto long-term leave by his disability no longer a qualified individual when he can no longer perform the essential functions of any position (at least during the lengthy periods he was unable to work).

Critically, Matthews cannot establish that he was a qualified individual at the time his benefits status changed on May 31, 2022.  It is undisputed that he did not work, and could not do any work, from

May 19, 2022 to May 2024 (ECF No. 46, PageID.620),[5] and thus even

assuming the benefits change on May 31, 2022 was in fact

discrimination on the basis of disability, it does not here fall within the

meaning of the ADA.  Matthews' assertion that "[t]hroughout the time

of the complained of discrimination, Plaintiff remained an employee of

the Detroit Police Department as a corporal officer" does not establish

that he was a qualified individual able to perform any work at all, with

or without a reasonable accommodation.  While it is true that he

remained an *employee* (though on leave), he was not a qualified

individual at the relevant time period.  With that in mind, the court can

address his discrimination and failure to accommodate claims.

### i.   Discrimination / Disparate Treatment

To establish a prima facie case of disability-based discrimination

under the ADA, a plaintiff must show that 1) he was disabled; 2) he was

otherwise qualified for the job, with or without reasonable

accommodation; 3) he suffered an adverse employment decision; 4) his

---

[5] At times, Matthews seems to argue he was still a qualified individual
because, even though he could not have gone on patrol, he still could have done light
desk work, which would fulfill the "essential functions" of desk-duty officers.  But
his admissions foreclose that argument.  ECF No. 46, PageID.620 ("Plaintiff could
not do *any* work during the nearly two-year period above") (emphasis added).

employer knew or had reason to know of his disability; and 5) similarly situated employees were treated more favorably. *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 619 (6th Cir. 2020) (citing *Rosebrough v. Buckeye Valley High School*, 582 F. App'x 647, 651 (6th Cir. 2014) (citations omitted)).  Matthews cannot establish a prima facie case of disability discrimination under the ADA because he was not a qualified individual at the time his disability benefits changed.

Meanwhile, as far as Matthews' briefings might be construed to allege that some of the discriminatory events happened while he was still a qualified individual, he makes no effort to develop those claims or explain why they would not be time-barred.  *See generally* ECF No. 48 (Plaintiff's supplemental *Stanley* brief).[6]  It is not the court's role to

---

[6] For example, "unlawful discrimination can take place at any one of three points in time: When a defendant "adopt[s]" a "discriminatory . . . practice," when an individual "is affected by application of a discriminatory . . . practice," or when she "becomes subject to" such a practice." *Stanley*, No. 23-997, 2025 U.S. LEXIS 2387, at *19-20 (plurality opinion) (proposing ways a plaintiff might avoid a strict application of the majority's holding); *see also id.* at *44 (Jackson, J, dissenting) (explaining that the plaintiff and those in her shoes could recover because, "[b]efore retiring, Lt. Stanley had a disability, was a qualified individual who performed the essential functions of her job despite that disability, and was subjected to an allegedly discriminatory policy based on her disability"); *id.* at *37-38 (Sotomayor, J., dissenting in part) (having joined the plurality, pointing out that "at least five Justices (four in the plurality and Justice Jackson in dissent) agree that plaintiffs in Lt. Stanley's shoes can plead disability discrimination if they were 'subject to a discriminatory compensation decision or other practice' while a qualified individual").

research or construct legal or factual arguments on behalf of a party.

*Grover v. BMW of N. Am., LLC*, 581 F. Supp. 3d 930, 950 (N.D. Ohio

2022); *see also Bolden v. Lowes Home Ctrs., LLC*, 783 F. App'x 589, 598

n.2 (6th Cir. 2019) (when a plaintiff "presents several undeveloped,

conflicting, and confusing arguments[, i]t is not the court's job to sift

through numerous filings and guess a party's precise position or

to develop a legal analysis that may lend support to that position").

Summary judgment is therefore granted to Defendant on Plaintiff's

ADA discrimination and disparate treatment claim.

### ii.   Failure to accommodate

Failure to accommodate claims are analyzed under the direct-

evidence framework, and so Matthews bears the burden of establishing

(1) that he is disabled, and (2) that he is "'otherwise qualified' for the

position despite his or her disability: (a) without accommodation from

the employer; (b) with an alleged 'essential' job requirement eliminated;

or (c) with a proposed reasonable accommodation." *Fisher v. Nissan N.*

*Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (quoting *Kleiber v. Honda of*

*Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007).  Matthews appears to be

arguing that DPD was required to offer him physical therapy in order to

come back to work, that his benefits status was changed, that he was listed as "AWOL" by DPD at times, and that he needed more time off and needed to sit in a chair at work.  *See* ECF No. 43, PageID.468.

First, Matthews' claims are difficult to follow.  He sometimes lumps events together or makes conclusory arguments that the court must guess at.  This is, broadly speaking, insufficient.  *See Bolden*, 783 F. App'x at 598.  But for the sake of addressing the arguments as best the court can, and even assuming that requests for physical therapy through medical benefits outside of work could be cabined into the failure to accommodate framework,[7] the claims Plaintiff brings in his complaint and response to the summary judgment motion are time barred.  *See, e.g.*, ECF No. 43, PageID.448-50 (alleging failure to provide physical therapy from 2014-2021).  Admittedly, Defendant brings up (on their own) instances in 2022 when DPD apparently authorized physical therapy for Matthews.  *See* ECF No. 45, PageID.493-94.  But Plaintiff never actually brought up those specific instances – only making a vague reference that "Plaintiff had been seeking accommodation from

---

[7] Which is doubtful.  *See Stevens v. Rite Aid Corp.*, 851 F.3d 224, 230 (2d Cir. 2017), *cert. denied* 138 S. Ct. 359 (finding no authority in support of the theory that employers are obligated to offer employees medical treatment as a reasonable accommodation under the ADA).

Defendants in the form of requesting physical therapy, etc., for years."
ECF No. 43, PageID.462.  Treating that sentence as creating a live
claim for failure to accommodate, when nothing about a failure to
authorize PT in 2022 was included in Plaintiff's complaint, *see* ECF No.
12, PageID.56-58, puts the court in a somewhat awkward posture.  Still,
even if they were live claims, the only evidence available related to
those claims is Defendant's evidence that he was in fact offered PT.  So,
even assuming that Plaintiff had specifically pled that he requested
accommodation in the form of physical therapy in 2022, and that this
can be considered an ADA accommodation claim rather than a worker's
compensation claim, no evidence exists to show that he was denied PT
during the relevant time.

As for needing more time off (ECF No. 43, PageID.468), which
presumably refers to the brief period Matthews worked in 2022, those
claims are time-barred, because they refer to the period prior to May 19,
2022.  The same goes for being required to sit on milk crates rather
than an office chair while experiencing physical distress at work, or any
claim about being forced to work more hours that day than he was
supposed to.  *See* ECF No. 41-1, PageID.245 (referring to May 18, 2022).

24

Even accepting those allegations as true, those claims are, unfortunately for Matthews, untimely by one day.

The court turns to the only remaining possible claims under the failure to accommodate claim: the benefits status change, being designated AWOL in 2023, and the Department requiring more medical documentation from him in 2023. *See, e.g.*, ECF No. 43, PageID.468; ECF No. 43, PageID.452. These claims, too, must fail because, even assuming that they could be otherwise made to fit into the reasonable accommodation framework, Matthews was not qualified at the time his benefits status changed, designated AWOL, or was required to provide additional medical documentation, because no reasonable accommodation would have allowed him to work at the time his benefits status changed. *E.g. Potter v. Xerox Corp.*, 88 F. Supp. 2d 109, 113 (W.D.N.Y. 2000) (if plaintiff could not hold any job, "he would be barred from asserting a claim under the ADA because there would exist *no* reasonable accommodation that would allow him to work").

Defendant's motion as to Count I must therefore be granted.

### E.    Retaliation Claim

That leaves Count II, for retaliation under 42 U.S.C. § 12203.
Unlike the above section, whether or not Matthews was a qualified
individual is irrelevant to his retaliation claim.  *Stanley*, No. 23-997,
606 U. S. ____, 2025 U.S. LEXIS 2387, at *11 ("Where § 12112(a)
prohibits certain acts of employment discrimination against 'a qualified
individual,' § 12203(a) prohibits retaliation against '*any* individual' who
opposes a discriminatory act.") (emphasis added).

"To establish a prima facie case of retaliation, Plaintiff has to
show (1) he engaged in activity protected by the ADA, (2) Defendant
knew he engaged in this activity, (3) Defendant subjected him to an
adverse employment action, and (4) a causal connection exists between
the protected activity and the adverse employment action."  *Falcone v.
City of Warren*, 581 F. Supp. 2d 841, 846 (E.D. Mich. 2008).

Where, as here, a plaintiff relies on circumstantial evidence of
retaliation, the familiar *McDonnell Douglas* burden shifting framework
applies.  Under the *McDonnell Douglas* framework, Matthews must
first establish a prima facie case of retaliation. *See Down v. Ann Arbor
Pub. Sch.*, No. 20-2114, 2021 U.S. App. LEXIS 37033, at *10 (6th Cir.

26

Dec. 13, 2021); 411 U.S. at 802.  If he can establish a prima facie case, the burden shifts to Defendant "to proffer some legitimate, non-retaliatory reasons" for the adverse action.  *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015).  If Defendants make this showing, the burden shifts back to Matthews to show that the proffered reasons were a pretext for retaliation.  *Id.*; *see also Down*, 2021 U.S. App. LEXIS 37033, at *10.

At first, this claim fares somewhat better.  In the light most favorable to Matthews, a reasonable jury could see a series of events that looks a lot like retaliation.  Matthews had been on disabled duty, "collecting" benefits, for a long time.  He was ordered to return to light desk work in 2022 against his wishes.  He was requesting reasonable accommodations during his return to work, such as simply sitting in an office chair rather than on milk crates (a fact that a jury could certainly point to as problematic).  And almost immediately upon his return to work, which he had warned his employer he was not ready for, he suffered multiple heart attacks, was hospitalized, was rendered unable to work, and his employer used the opportunity to redesignate his long-time "disabled" status as non-duty related "sick" status instead, which

27

significantly changed the benefits he was entitled to moving forward. So, without trying to fit all of these facts into the prima facie case framework, the court simply assumes for purposes of the following analysis that Matthews has made out a prima facie case for retaliation.[8]

However, Matthews' claim runs into difficulty when trying to make the causal connection between the change in benefits status and his employer's possible retaliatory animus.  According to Defendant, only a Department designated physician can determine a members duty-status: "disabled" (duty-related injury/illness) vs "sick" (non-duty related injury/illness) status.  Department Policy states that a department designated physician decides whether an injury was duty incurred as well as the duty status of the officer.  ECF No. 41-1, PageID.357, 362.  And here, the only available evidence shows the evaluating physicians at the Henry Ford Occupational Health Clinic determined Plaintiff's duty-status – not Plaintiff's supervisors, HR professionals in the Medical Section, or the individuals holding the

---

[8] The court also assumes it is sufficiently related to the facts of his EEOC charge, which never explicitly mentions retaliation and does not reference any events after May 18, 2022.  *See* ECF No. 1-1, PageID.14.

checkbook.[9]  Defendant has therefore come forward with a "legitimate, non-retaliatory" reason for the adverse action, and Matthews has the burden to come forward with some evidence to show why the court, or a jury, could legitimately doubt the nondiscriminatory decision-making of the department-designated physician.

A party opposing a motion for summary judgment must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004) (emphasis added).  Mere allegations or denials in the non-movant's pleadings do not satisfy this burden.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Plaintiff's briefings do nothing to satisfy this burden.  On the issue of pretext, the briefing reads, in full:

> Defendants attempt to hide their actions behind "department policy".  The Department has harassed Plaintiff as a result of his disability for years.  Defendants have been trying to force

---

[9] Admittedly, after several reviews of the record, there is not an abundance of evidence showing how, exactly, his benefits status changed on May 31, 2022.  The main pieces of evidence are found at ECF No. 41-13, PageID.436 (the duty status change as of 5/31/2022), and the various policies indicating that only a department designated physician makes this determination.  *See, e.g.*, ECF No. 41-1, PageID.362, 366.  But Matthews never actually disputes that a department designated physician made the determination itself, so any question here is not materially disputed with record citations or contravening evidence.

Plaintiff out of the Department through changing his status from "disabled" to "AWOL" repeatedly while Plaintiff was actively in compliance at all times.  Further, Defendants actions of changing Plaintiff from "disabled" to "sick" status is just another tactic by Defendants to attempt to force Plaintiff out of his employment.

Plaintiff should have never been moved from "disabled" to "sick".  Plaintiff remains disabled from a "duty-related injury" as the Department provides.  There is not a single physician that has removed his "duty-related injury" as concluded. Plaintiff returned to restricted duty under his disabled status as a result of his duty-related injury, Plaintiff remains disabled as a result of his duty-related injury.  Defendants "sick" designation is discriminatory.

ECF No. 43, PageID.466-67; ECF No. 43, PageID.469 (incorporating by reference the above).

In that argument, Plaintiff does not cite to any record evidence at all.  But even incorporating Plaintiff's statement of facts, Plaintiff never rebuts the City's legitimate, nondiscriminatory explanation that the relevant decisionmaker (the designated doctor) had no retaliatory animus in changing his duty designation to "sick."  The closest Plaintiff gets to directly arguing this point are in two sentences.  One, he says, "[t]here is not a single physician that has removed his 'duty-related injury' as concluded."  But that allegation appears to merely reference

30

that neither party has disputed that Matthews remains disabled due to his 2011 injury, not that the reason Matthews initially went out on leave in May 2022 was a cardiac event that a physician judged to be non-duty related.  To the extent that determination may be wrong, or the resulting effect on his benefits unfair to Matthews, that complaint can be addressed in worker's compensation claims, but is not an ADA retaliation case absent some (any) proof that the doctor took that action in opposition to Plaintiff's protected ADA activity.  Second, he says putting the blame on the physician is "ill-placed" because "once at work, Defendants discriminated against Plaintiff at a heightened level."  ECF No. 43, PageID.468.  But that doesn't provide any connective tissue to the doctor's decision; it just shifts the focus to other employees who are not alleged to have had a hand in the decision to change his benefits status.  So what, in Matthews' argument, connects any DPD supervisors' opinions of Matthews to the physician making the duty status determination?  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998) ("discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination").  What evidence shows that a doctor did

not in fact review his records and make a determination that Department staff merely recorded?  Matthews comes forward empty-handed; he presents no specific evidence on which a reasonable jury could rely, but rests instead on conclusory allegations about his treatment by the Department as a whole.  On the evidence available, no reasonable jury could conclude that DPD's Medical Section officers making stray remarks about him were in actually in a position to influence the department designated physician's decision to change his status to "sick."  *See Ercegovich*, 154 F.3d at 355.

Because the court found Plaintiff's briefings difficult to follow, the court asked Plaintiff's counsel to clarify whether there were any other acts, other than the change of benefits status, under the retaliation claim.  Counsel clarified that there was not, and so the court stops there.

No reasonable jury could find on these facts that the City or DPD acted with retaliatory intent in changing Matthews' duty status because there is no evidence connecting that duty status change to retaliatory animus on the part of the relevant decisionmaker, and summary judgment must be granted as to Count II.

## V.      CONCLUSION

Therefore, the Court **GRANTS** Defendant's motion for summary

judgment, and dismisses the case.  An order of judgment will follow.

**SO ORDERED**.


Date: August 8, 2025                              s/F. Kay Behm
                                                  F. Kay Behm
                                                  United States District Judge